UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REGAL CONSTRUCTION, LLC** | **CIVIL ACTION** |
| **VERSUS** | **No. 10-1765** |
| **JASON IV AVIATION, INC., ET AL.** | **SECTION I/5** |

### ORDER AND REASONS

Before the Court is a motion[1] to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant, Travelers Indemnity Company ("Travelers"). Cross-claimant, Jason IV Aviation, d/b/a Odyssey Aviation of New Orleans, ('Jason IV") opposes the motion.[2] For the following reasons, the motion is **DENIED**.

### *BACKGROUND*

The dispute before the Court arises out of property damage caused by Hurricane Katrina to three aviation hangers at the Lakefront Airport leased by Jason IV. The lawsuit was originally initiated on June 3, 2010 by Regal Construction, LLC ("Regal") against Jason IV and II International, Inc. d/b/a Million Air Cincinnati, for breach of contract concerning non-payment for construction-related work.[3] Subsequently, on August 19, 2010, Jason IV filed a cross-claim against Travelers.[4] On October 12, 2010, the Court severed Regal's main demand against Jason

---

[1] R. Doc. No. 73.
[2] R. Doc. No. 81.
[3] R. Doc. No. 1.
[4] R. Doc. No. 32.

1

IV and others from Jason IV's cross-claim against Travelers.[5] Accordingly, the only dispute remaining before the Court is Jason IV's cross-claim against Travelers.

Jason IV's amended cross-claim alleges that when Hurrican Katrina struck, each of the buildings was covered by an insurance policy with Travelers (the "Policy") at replacement cost value less a 5% deductible.[6] Regarding valuation, the Policy states:

> We will determine the value of Covered Property in the event of loss or damage as follows:
> a.     At replacement cost (without deduction for depreciation) as of the time of loss or damage…However, property will be valued at the actual cash value at the time of loss or damage until the property is repaired or replaced within a reasonable period of time.

Following the storm, Jason IV submitted a claim with Travelers and received $1,914,656.05 for the actual cash value ("ACV").[7] Jason IV alleges it was instructed by Travelers that supplemental payments for the replacement cash value ("RCV") would be made upon commencement of the replacement and repair of the damaged property.[8] In August and September 2009, Jason IV began submitting its contractor's applications for payment and Travelers issued supplemental payments for the RCV totaling $469,743.97.[9] On March 24, 2010, Jason IV alleges that is submitted a request to Travelers for payment of the remaining balance on the policy limits but never received a response.[10]

Jason IV brings this lawsuit claiming that since its total replacement costs exceed the ACV and supplemental RCV payments and that it submitted proof of its costs, it is entitled to the remaining balance of $952,963.79 on the policy limits.[11] Travelers has moved to dismiss Jason

---

[5] R. Doc. No. 72.
[6] On January 21, 2010, Jason IV filed an amended cross claim. R. Doc. No. 111.
[7] Id.
[8] Id.
[9] Id.
[10] Id.
[11] Id.

IV's claim on the ground that Jason IV's cross-claim was filed nearly three years after the Policy's mandated time frame for bringing suit had expired.[12]

## *LAW*

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in Gonzalez v. Kay:

> "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the Twombly standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. See Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. Spivey, 197 F.3d at 774; Lowrey v. Tex. A & M Univ. Sys., 117 F.3d

---

[12] R. Doc. No. 73.

242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.' " Cutrer v. McMillan, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quoting Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986)).

## *ANALYSIS*

Travelers asserts that Jason IV's claim is untimely because Jason IV filed its lawsuit after the contractually agreed upon for bringing suit under the Policy. The Policy contains the following limitation provision for legal actions brought under the Policy's property coverage:

> **4. Legal Action Against Us**
> No one may bring legal action against us under this Coverage Part unless:
> a.      There has been full compliance with all of the terms of this Coverage Part; and
> b.      The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Travelers argues that since the direct physical loss or damage occurred when Hurricane Katrina struck in August 29, 2005, the contractual deadline for Jason IV to file suit against Travelers for monies due under the Policy expired on August 29, 2007. Because Jason IV did not file its cross-claim until August 19, 2010, Travelers argues that the Policy's limitation provision is a bar to relief.

Jason IV makes three arguments in support of its contention that its claim is not prescribed: (1) its claim does not arise under the Policy so the limitation provision does not apply; (2) the language of the limitation provision is ambiguous and, therefore, unenforceable; and (3) Travelers, through its conduct, waived its right to claim the benefit of the limitation provision. The Court addresses each argument in turn.

**I.      Characterization of Claim**

The first argument is that the instant case "is not a claim dispute, but rather [a] dispute over whether Travelers fulfilled its contractual obligations incurred upon settlement of the original claim."[13] In other words, Jason IV attempts to argue that it is not asserting a breach of the Policy, but rather a breach of a separate settlement agreement. Under such a theory, Jason IV argues that its claim is not prescribed under the Policy's limitation provision because its claim does not arise from the Policy.

Jason IV's argument is belied by its own assertions in the amended cross-claim which states, "Travelers' failure to issue payments for actual replacement costs after the receipt by Travelers of documentation evidencing that the repair and replacement costs of the damages and destroyed hangers exceeded the policy limits **was a breach of Traveler's insurance contract**…"[14] Furthermore, Jason IV makes no factual allegations to support its argument regarding the existence of a separate settlement agreement. Nowhere in the amended cross-claim does any mention of a vehicle for Travelers' new contractual obligations appear. Even after construing all factual allegations in a light most favorable to Jason IV, the Court finds an insufficient factual basis to distinguish Travelers' obligations under the Policy from the alleged obligations under a later settlement.

## II.   Ambiguity of Limitation Provision

Jason IV's second argument is that the provision of the Policy regarding legal action is ambiguous in two respects: (1) the phrase "the date on which direct physical loss or damage occurred" does not specify what type of "damage" triggers the running of the prescriptive period; and (2) the two-year prescriptive period conflicts with the valuation provision which permits the insured to repair or replace the property within a reasonable period of time.

---

[13] R. Doc. No. 91, p.2.
[14] R. Doc. No. 93-3, ¶37 (emphasis added).

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003); see also id. ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.") (citing La. Civ. Code art. 2045).[15]  "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc., 180 F.3d 664, 668 (5th Cir. 1999).  "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.  "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." Amoco Prod., 180 F.3d at 668-69 (quoting Tx. Eastern Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted).

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." Cadwallader, 848 So.2d 577, 580 (La. 2003).  A court should not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." Id.  "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." Id.

In support of its contention that "the date on which direct physical loss or damage occurred" is ambiguous, Jason IV argues that the word "damage," as contemplated by the policy, is Travelers' failure to issue additional payments after the buildings were repaired rather than the

---

[15] The parties do not dispute that Louisiana law applies to the insurance policy at issue in this case.

6

physical damage caused by Hurricane Katrina. However, such an interpretation strains the plain meaning of the phrase "direct physical loss or damage."[16]

Jason IV next contends that ambiguity exists in the Policy because the valuation provision conflicts with the provision regarding the prescriptive period, which bars lawsuits brought under the Policy after two years. The Policy requires the insured to repair or replace the damaged property before they can receive RCV payments. The Policy also requires repair or replacement of the property within a reasonable period of time.[17] Jason IV argues that, under the rules of contractual interpretation, a conflict of this nature should be resolved in favor of the insured and the two-year prescriptive period should give way to the reasonable period of time as required by the valuation provision.

In Estate of Degraauw v. Travelers Ins. Co., 940 So.2d 858 (La. Ct. App. 2006), the Louisiana appellate court faced a similar factual scenario and the same argument regarding resolution of conflicting provisions. The insurance policy at issue required that any lawsuit under the policy be brought within one year of the date of loss. Id. at. 861. The policy also required completion of repair or replacement of the property before the insurer would pay replacement costs. Id. at 862. The plaintiff argued that in light of the conflict between the provisions, the court should deem the lawsuit limitation provision inoperative. Id. The court stated:

> [W]e reject the notion that the prescriptive period should be ignored because it is in conflict with the loss settlement provision of the policy. The one-year time limitation in the suits provision is one in which the insured must assert his or her claim judicially, but it does not require the insured to settle the claim within this time

---

[16] The Court also notes that the phrase "direct physical loss or damage" is used elsewhere in the Policy. For example, in the section entitled "Overseas Business Travel", the Policy states, "[w]e will pay for direct physical loss or damage to business personal property while in the custody of any officer or employee of the insured…." R. Doc. No. 73-2, p.15. Since the meaning of "damage" under this earlier provision can only reasonably refer to physical damage, it would be unreasonable for the exact same term to take on a different meaning later in the Policy.
[17] Id.

7

> period. Consequently, even if the claim is still pending, unless the insurer in some manner leads the insured to reasonably believe that the time limitation has been waived, the insured must file any lawsuit within the specified one-year time limitation. Moreover, we are mindful that the contents of the policy constitute the law between the parties, which will be enforced as written if the terms are clear and express the intent of the parties.

Id. at 862-63 (citations omitted).

The same reasoning applies in this case. The terms of the lawsuit limitation provision of the Policy are clear and unambiguous. Accordingly, it would not be appropriate for the Court to ignore the prescriptive period contained in the Policy.

### III.     Waiver of Prescriptive Period

Jason IV's third argument is that through its conduct, Travelers has waived its right to claim the benefit of the two-year prescriptive period. As Louisiana courts have made clear:

> Nevertheless, the insurer's conduct can waive the time limitation inserted for its benefit in the policy. The waiver need not be in writing, but may be evidenced by conduct on the part of the insurer which indicates continuation of negotiations thereby inducing the insured to believe the claim will be settled without suit. Prescription may be interrupted if the insured is lulled into believing the claim will be paid. Prescription also may be interrupted by acknowledgment of the plaintiff's right to recover.

Griffin v. Audubon Ins. Co., 649 So.2d 72, 74 (La. Ct. App. 1994) (citations omitted). The Louisiana Supreme Court has further explained:

> A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments. These generalizations are reflected in the host of cases addressing the issue of what constitutes a tacit acknowledgment. Our courts have added to the above generalizations other criteria that evidence an acknowledgment, including undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent

> contact with the creditor throughout the prescriptive period. Conversely, our courts have recognized that mere recognition of a disputed claim, conditional payments, and settlement or compromise offers or negotiations do not evidence an acknowledgment.

Lima v. Schmidt, 595 So.2d 624, 634 (La. 1992) (citations omitted).

Jason IV's amended cross-claim includes allegations of undisputed liability,[18] repeated and open-ended reassurances of payment,[19] and continuous and frequent contact with the creditor throughout the prescriptive period.[20]  Accordingly, given that the Court must draw all reasonable inferences in favor of the plaintiff, the Court finds that Jason IV has pled sufficient facts to show that prescription may have been interrupted.  To the extent that discovery does not reveal evidence that Travelers acknowledged Jason IV's claim before August 29, 2007, Travelers may timely move the Court for summary judgment.

**IT IS ORDERED** that Travelers' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) is **DENIED.**

New Orleans, Louisiana, January 26, 2011.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[18] R. Doc. No. 111, ¶27 ("At all relevant times prior to August 29, 2007, Tim led Jason IV to believe that the supplemental payments for RCV would be paid without contest once the damaged property was repaired or replaced.").

[19] Id.  See also id. at ¶19 ("After receipt of the ACV payments, Jason IV was instructed by a Travelers claims handler, believed to be named Tim, that the RCV payments would be made upon commencement of the replacement and repair of the damaged property.").

[20] Id. at ¶26 ("At all relevant times after receipt of the ACV payments from Travelers up until August 29, 2007, Jason IV kept in contact with Travelers through the claims adjuster, Tim.").